**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>The Roman Catholic Diocese Of Ogdensburg, New York,<br><br>                    Debtor. | Hearing Date: October 3, 2023 at 1:00 pm ET<br><br>Hearing Location: Alexander Pirnie<br>U.S. Courthouse and Federal Building<br>10 Broad Street, Utica, New York<br><br>Chapter 11<br><br>Case No. 23-60507 (PGR) |
| The Roman Catholic Diocese of Ogdensburg, New York, *et al.*,<br><br>                    Plaintiffs,<br><br>        v.<br><br>Certain Underwriters at Lloyd's, London, *et al.*,<br><br>                  Defendants. | Adv. Proc. No.: 23-80013 |

**RESPONSE OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS REGARDING DEBTOR'S
MOTION FOR ENTRY OF AN ORDER REFERRING
CERTAIN MATTERS TO MEDIATION**

The Official Committee of Unsecured Creditors (the "**Committee**") of The Roman Catholic Diocese of Ogdensburg, New York, the debtor and debtor-in-possession (the "**Debtor**" or the "**Diocese**") in the above captioned case (the "**Case**") under chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"), by and through its proposed undersigned counsel, respectfully submits this response (this "**Response**"), regarding the Diocese's Motion for Entry of an Order Referring Certain Matters to Mediation (the "**Motion**") [Doc. No. 44].[1]

---
[1] Capitalized terms used but not defined herein shall have the meanings and definitions ascribed to them in the Motion.

## INTRODUCTION

1.      The Committee believes that a fair mediation process is the proper tool to try to resolve all issues in this Chapter 11 Case with the objective of confirming a consensual plan of reorganization that memorializes a settlement between survivors of sexual abuse, the Diocese, related entities (such as parishes) and their insurers.  Mediations have led to successful conclusions of every concluded chapter 11 case commenced by a Roman Catholic diocese or religious order to date.  The mediation process is multi-faceted, and will likely address, among other things, disputes regarding insurance coverage, property available to the Diocese's estate and other Catholic entities to fund a settlement, and the Diocese's related entities (*e.g.*, schools and parishes) liability for sexual abuse claims.  These issues are inter-related and must be addressed to resolve this Chapter 11 Case through a consensual plan.  Litigating these issues without attempting a negotiated solution would unduly delay resolution of this case and carries risk and cost for all parties.

2.      While the Diocese filed its Motion under the Insurance Adversary caption, the mediation process should be global and not limited to insurance issues.  The complexity of the Diocese's Chapter 11 Case, given the number of claims, the types and number of insurance policies at issue, and questions regarding ownership of assets that the Diocese asserts its holds in trust or for the benefit of non-debtor entities (e.g., the Deposit and Loan Fund) requires a seasoned mediator with experience regarding insurance coverage issues, sexual abuse litigation, rights regarding assets of not for profit entities, and bankruptcy issues.

3. The elements necessary for a successful mediation include: (a) disclosure of information; (b) selection of a mediator or mediators with the necessary qualifications and experience; (c) information regarding claims; and (d) the ability to seek Court intervention as and when deemed necessary by each party to the mediation. At this stage in the Case, elements (a) and (c) are in progress and the Committee believes it is an appropriate time to direct the parties to mediation.

4. Committee counsel has represented committees of survivors in thirteen chapter 11 cases of Roman Catholic entities that were resolved through a mediation process. In addition, the Committee is aware that counsel to the overwhelming majority of survivors have experience resolving sexual abuse claims involving large numbers of survivors through mediation. Given the number of claims filed in this Case and the complexity of the insurance, mediation is appropriate to help the parties navigate potential issues and reach a consensual chapter 11 plan.

## STATEMENT

### A.   Claims Against the Diocese

5. Approximately 124 sexual abuse claims have been asserted against the Diocese pursuant to the Child Victim Act.[2] In contrast to four other Dioceses in New York, the Debtor filed its chapter 11 case after the CVA window closed. As such, it is unlikely that many additional claims may be asserted against the Debtor under the CVA. As a result, while details

---

[2] *See Declaration of Rev. Kevin J. O'Brien Regarding Structure and Pre-Filing History of the Roman Catholic Diocese of Ogdensburg, New York and in Support of Chapter 11 Petition and First Day Pleadings* dated July 14, 2023 at ¶ 44 [Docket No. 7].

of claims may need to be adduced through the mediation process, the universe of claims is known.

**B.    Issues To Be Addressed Through Mediation**

6.    The Committee anticipates that mediation will address three general categories of disputes: (a) insurance coverage; (b) property available to settle claims against the Diocese; and (c) the liability of the Diocese and its related entities for sexual abuse claims.

7.    Insurance coverage disputes include legal issues, such as the definition of an occurrence or an accident, which are well-settled under New York law in the context of sexual abuse. *See, e.g., Roman Catholic Diocese of Brooklyn, et al. v. National Union Fire Ins. Co. of Pittsburgh, PA, et al.*, 21 N.Y.3d 139, 991 N.E.2d 666, 969 N.Y.S.2d 808 (2013). However, many coverage disputes will be fact-intensive, likely including lost policies (evidenced in some cases by secondary evidence of coverage), assertions that coverage is not available because the abuse was expected or intended by the Diocese or other insureds, notice and timeliness of asserted claims by the insured, and allocation of abuse over multiple policies.

8.    The Committee is analyzing the amount of assets, including insurance, available to fund a settlement for sexual abuse claims. The Diocese has provided the Committee with documents regarding its finances and governance.[3] The Committee anticipates that the Diocese will assert that certain assets are not available to fund a settlement due to various restrictions (including alleged donor intent, assets allegedly titled to a non-Diocesan entity, and purported

---

[3] The Committee reserves the right to avail itself of all rights regarding discovery of information in furtherance of its investigation of assets available to fund a settlement, including through use of Fed. R. Bankr. P. 2004.

necessity for the Diocese's religious mission) or that the assets are property of non-debtor entities.

9.   Finally, the Committee expects the Diocese to seek a release and channeling injunction for the benefit of its parishes and other entities. Under applicable Second Circuit law, a third-party release and channeling injunction can only be obtained if (a) there is an identity of interest between the debtor and released third parties, (b) the claims against the debtor and released third parties are factually and legally intertwined, (c) the scope of the releases is appropriate, (d) the releases are essential to a successful reorganization, (e) the non-debtor contributed substantial assets to the reorganization, (f) the impacted class of creditors "overwhelmingly" voted in favor of the plan, and the plan provides for fail payment of enjoined claims. *See Purdue Pharma, L.P. v. The State of Washington (In re Purdue Pharma, L.P.)*, 69 F.4th 45 (2d Cir. 2023), *cert. granted*, ___ S.Ct. ___, 2023 WL 5116031 (Aug. 10, 2023). As such, information about these entities' assets and scope of liability must be addressed in a mediation to negotiate a global settlement. As part of this process, the Committee anticipates the Diocese and survivors will address the following issues, among others: (a) notice to the Diocese and other entities of sexual abuse; (b) the relationship between certain abusers and the Diocese (*e.g.*, the Committee anticipates that the Diocese will assert that it is not liable for abuse by clergy of religious orders, lay employees or volunteers); (c) the extent of injuries suffered by abuse survivors; (d) the amount of liability for sexual abuse claims; and (e) non-diocesan entities' relationship to the Diocese and liability for abuse claims. The Committee recognizes that litigating these issues may take years. As such, the Committee supports mediation of these issues.

10. As one court recognized, in a diocesan reorganization, "[t]remendous complexity suggests a need for mediation." *In re The Diocese of Buffalo, N.Y.*, 634 B.R. 839, 844 (Bankr. W.D.N.Y. 2021).

C. **Mediator Selection**

11. Mediator selection is critical for the ultimate success of this process. All cases involving sexual abuse of hundreds of children by clergy are complex. Such claims are unique due to the acts and injuries suffered by survivors. One critical aspect of sexual abuse is the loss of control felt by the child when the perpetrator abused him or her. In fact, the Diocese's choice to commence its Chapter 11 Case rather than address the litigation through the state court system is a re-victimization of survivors by removing their control of the timing and forum of their claims. The issues stemming from such loss of control as a child typically affect survivors throughout their lives. Asserting a claim against the Diocese is the first step towards regaining control. It is critical that a mediator selected for this Chapter 11 Case has experience mediating cases involving childhood sexual abuse, is sensitive to working with victims/survivors, and will respect the traumatic experiences they have endured through a process that will enable them to regain the power and control they lost as children. A misstep by the mediator without such experience could set the process back and re-traumatize the victims/survivors.

12. The Committee has discussed mediator selection with the Diocese, but has not reached an agreement with the Diocese on selection of the mediator. As one court noted that

> [In a Diocesan Chapter 11 case], the Committee represents those parties in interest who would be most impacted by that risk. If the Committee has reason to believe that a

particular mediator is more likely to achieve a timely resolution, we must give a reasonable degree of deference to its recommendation.

*In re The Diocese of Buffalo, N.Y.*, 645 B.R. 269, 271 (Bankr. W.D.N.Y. 2022) (Holding that where proposed mediator candidates' qualifications are similar, deference should be given to the Committee's choice).

13.     For this matter, the Committee recommends that retired United States Bankruptcy Judge Christopher S. Sontchi be retained as mediator. Mr. Sontchi's credentials are beyond question. He served as a Bankruptcy Judge for the District of Delaware from 2006 through 2021, including three years as Chief Judge. Since his retirement from the bench, Mr. Sontchi serves as an International Judge on the Singapore International Commercial Court and as Arbitrator on the Singapore International Arbitration Centre. He also maintains an active mediation practice and mediated dozens of complex matters while he was on the bench. While he was a Bankruptcy Judge, he presided over the chapter 11 case of the Diocese of Wilmington, Delaware. A copy of Mr. Sontchi's resume is attached as **Exhibit A** hereto and further information about him may be found at https://sontchillc.com/biography/ (last visited September 24, 2023).[4]

### D.     Global Mediation is the Best Option to Resolve this Case

14.     The Committee, based on the experience of state court counsel to individual Committee members and Committee counsel, believes that a mediation process is the best option to resolve this Chapter 11 Case. The mediation process should be global and pertain to all the disputes that need to be addressed to resolve the case, including insurance, liability, and assets available to fund a settlement.

---

[4] The Committee reserves the right to respond to any pleadings or other information presented to the Court regarding mediator selection.

15. The mediation process allows parties to conduct a structured negotiation, and, if necessary, seek Court intervention for discrete matters. While there is no guaranty of success through mediation, every concluded chapter 11 case of a Roman Catholic entity has resolved through mediation.[5]

16. A global mediation process will also take time. Diocesan bankruptcies in New York are different than most other diocesan bankruptcies. Most dioceses that decided to commence chapter 11 cases did so after substantial litigation. Such litigation was often ongoing for **years** before a chapter 11 case was filed, with survivors' state court counsel uncovering facts about the abuse, the perpetrators, and the diocese over time. In New York, the "window" opened by the CVA compressed this process. As previously disclosed to the Court, most litigation against the Diocese and related entities is in its infancy. For mediation to be successful, the parties need complete information. Otherwise, negotiations will be stalled as information gets exchanged since parties cannot consider offers and counteroffers in a vacuum.

17. Given the complexity of this Case and the number of parties involved, mediation poses the best opportunity for this Case to reach a consensual resolution.

[Remainder of Page Intentionally Blank]

---

[5] These resolved cases are: Diocese of Spokane (E.D. Wa.); Diocese of Davenport (S.D. IA); Diocese of San Diego (S.D. Cal.); Diocese of Fairbanks (D. Alaska); Diocese of Wilmington (D. Del.); Society of Jesus, Oregon Province (D. Or.); Archdiocese of Milwaukee (E.D. Wis.); The Christian Brothers' Institute and The Christian Brothers of Ireland, Inc. (S.D.N.Y.); Diocese of Gallup (D.N.M.); Roman Catholic Bishop of Helena (D. Mont.); the Roman Catholic Bishop of Stockton (E.D. Cal.); and Roman Catholic Bishop of Great Falls-Billings (D. Mont.).

## **CONCLUSION**

18. Based on the foregoing, the Committee respectfully requests that the Court enter an order directing that insurance disputes, property disputes and the disputes over the Diocese's and related entities' liability be sent to mediation with a mediator selected by the parties, subject to the Court intervention in the absence of an agreement. Such relief should be without prejudice to any party's right to seek court intervention on any issue later.

                                              Respectfully submitted,

                                              PACHULSKI STANG ZIEHL & JONES LLP.

Dated: September 26, 2023         */s/ Ilan D. Scharf*
                                              James I. Stang, Esq. (admitted *pro hac vice*)
                                              Ilan D. Scharf, Esq.
                                              Karen B. Dine, Esq.
                                              780 Third Ave., 34th Floor
                                              New York, NY 10017
                                              Telephone: (212) 561-7700
                                              Facsimile: (212) 561-7777
                                              E-mail: jstang@pszjlaw.com
                                                          ischarf@pszjlaw.com
                                                         kdine@pszjlaw.com

                                             *Proposed Counsel to the Official Committee of*
                                             *Unsecured Creditors of The Roman Catholic Diocese*
                                             *of Ogdensburg, New York*

**EXHIBIT A**



# Sontchi, LLC

## Insolvency, Restructuring & Complex Litigation Expertise

CHRISTOPHER S. SONTCHI
Sontchi@SontchiLLC.com | +1 302.562.6360

**EDUCATION**
  **The University of Chicago Law School**, Juris Doctor
  **The University of North Carolina at Chapel Hill**, Bachelor of Arts with Distinction, *Phi Beta Kappa*

**AWARDS**
  **Association of Insolvency and Restructuring Advisors Judicial Service Award**

**EXPERIENCE**
  **Sontchi, LLC** | Mediator, Arbitrator, Expert Consultant and Witness
   • High rate of success as mediator for resolution of complex commercial disputes.
   • Trusted expert on issues of commercial and bankruptcy law
  **Singapore International Commercial Court** | International Judge
   • Appointed 2022 as International Judge focusing on insolvency matters.
   • Leading effort to establish first international insolvency court focused on South and Southeast Asia.
  **Singapore International Arbitration Centre** | Board of Arbitrators
   • Appointed 2023
  **United States Bankruptcy Court for the District of Delaware** | Judge
   • Chief Judge 2018-2021.
   • Served 2006-2022.
   • Presided over many of the most complex corporate restructurings in the United States and issued over 200 written decisions and countless bench rulings.
   • Extensive practical experience as a judicial mediator, successfully handling such complex cases as *Mallinckrodt plc*, and *MD Helicopters*.
  **Ashby & Geddes** | Attorney
   • Bankruptcy practitioner 1993-2006.
   • Represented clients in all aspects of bankruptcy, including debtors, official and unofficial committees, secured creditors, trade vendors, landlords, parties to executory contracts, purchasers of assets, litigation parties, and directors, officers, and employees.
  **Delaware Supreme Court** | Law Clerk to Hon. Joseph T. Walsh

**BAR ADMISSIONS**
  **State Bar Admissions**
    Delaware
  **Federal Bar Admissions**
    U.S. Court of Appeals for the 3rd Circuit
    U.S. District Court for the District of Delaware

**APPOINTMENTS, COMMISSIONS & COMMITTEES**
- **The University of Chicago Law School**, Lecturer in Law
- **Widener University Delaware Law School**, Adjunct Professor
- **World Bank Group**, Consultant
- **American College of Bankruptcy**, Fellow
- **Singapore Global Restructuring Initiative**, **International Advisory Council**, member
- **The University of Chicago Law School Center on Law and Finance, Founders' Committee**, Distinguished Member
- **International Insolvency Institute**, member
- **Judicial Insolvency Network**, founding member
- **National Conference of Bankruptcy Judges**, member
- **American Bankruptcy Institute**, member
- **INSOL International**, member
- **American Bankruptcy Institute Commission to Study the Reform of Chapter 11**, committee member

**PUBLICATIONS**
- **Edward R. Morrison, Mark J. Roe, and Christopher S. Sontchi, Rolling Back the Repo Safe Harbors**, 69 The Business Lawyer, No. 4, 1015 (August 2014)
- **Christopher S. Sontchi, Valuation Methodologies: A Judge's View**, 20 American Bankruptcy Institute Law Review, No.1, 1 (Spring 2012)
- **Christopher S. Sontchi and Bruce Grohsgal, Should the Appointment of a Committee of Unsecured Creditors Be Made Optional in Chapter 11 Cases?** XXXVIII ABI Journal, No. 11 (November 2019)
- **Christopher S. Sontchi, Loan to Own is Back – With a Twist**, 27 Journal of Corporate Renewal, No. 6, 30-33 (July/August 2014)
- **Christopher S. Sontchi, Mortgages Should Be Removed from Repo Agreement Safe Harbors**, XXXIII ABI Journal, No. 6, 10-11, 63 (June 2014)
- **Christopher S. Sontchi, Top 10 Things I Have Learned Since I Took the Bench,** XXVII ABI Journal, No. 6, 46-47, 78 (July/August 2008)

**CONGRESSIONAL TESTIMONY**
- *Exploring Chapter 11 Reform: Corporate and Financial Institution Insolvencies; Treatment of Derivatives*, Hearing Before the House Subcommittee on Regulatory Reform, Commercial, & Antitrust Law of the House Committee of the Judiciary, 113th Cong. 6 (Mar. 26, 2014)